# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| RYAN WAYNE SATTER, | Case No.: 4:14-cv-00205-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Respondent. | |

Pending before this Court is Petitioner Ryan Wayne Satter's Complaint and Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his "application for Social Security Disability and Supplemental Security Income Disability benefits for lack of disability." Pet. for Review, p. 1 (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

In June 2011, Ryan Wayne Satter ("Petitioner") (1) protectively filed a Title II application for a period of disability and disability benefits, and (2) filed a Title XVI application for supplemental security income; in both applications, Petitioner alleged disability beginning May 3, 2010. These claims were initially denied on July 21, 2011 and, again, on reconsideration on October 28, 2011. On December 10, 2011, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 8, 2013, ALJ Arthur S. Cahn held a

**MEMORANDUM DECISION AND ORDER - 1**

video hearing in Sacramento, California, at which time, Petitioner, represented by attorney Brad D. Parkinson, appeared (in Pocatello, Idaho) and testified.

On January 22, 2013, the ALJ issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on March 22, 2013.  On March 24, 2014, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that "the Commissioner's decision contains errors of law and is not based on substantial evidence as required by 42 U.S.C. § 405(g) . . . ."  Brief in Supp. of Pet. for Review, p. 1 (Docket No. 14).  Specifically, Petitioner contends:

> The Administrative Law Judge in this matter determined that Mr. Satter could work if he received appropriate medical care, and that Mr. Satter could not be found disabled for his non-compliance with prescribed medical care.  Mr. Satter's inability to afford medical care was not considered in the denial of benefits.
>
> Social Security Disability law requires that Mr. Satter not be denied benefits for failing to following through with medical care that he cannot afford.

*Id*. at p. 2; *see id*. at pp. 8-9 ("Mr. Satter clearly states throughout his medical records and in his testimony that he is unable to afford the medical care he needs.  His inability to pay for his prescribed medical care is a justifiable cause for failing to follow the prescribed treatment.  The ALJ did not consider whether his failure to follow the prescribed care was justified.").  Petitioner therefore requests that the court either reverse the ALJ's decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees.  *See* Pet. for Review, p. 2 (Docket No. 1).

**MEMORANDUM DECISION AND ORDER - 2**

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 3**

1982)).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

       With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.**    **Sequential Process**

       In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

       The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA,

**MEMORANDUM DECISION AND ORDER - 4**

disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since May 3, 2010, the alleged onset date. (AR 19).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "diabetes mellitus with peripheral neuropathy and right should problems." (AR 19).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor

**MEMORANDUM DECISION AND ORDER - 5**

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 20-21).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the RFC to "perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)," with the ability to:

> lift and/or carry 20 pounds "occasionally" and 10 pounds "frequently," sit a total of six hours and stand/walk a combined total of six hours in an eight-hour workday.  He is unlimited in pushing and/or pulling including operation of hand and/or foot controls.  He can "never" climb ladder, ropes or scaffolds.  He can "occasionally" stoop and crouch.  He can "frequently" climb ramps/stairs, balance, kneel and crawl. He should avoid "concentrated" exposure to extreme cold, vibrations and exposure to a hazardous work environment such as working around moving machinery and equipment, operating a motorized vehicle and working at unprotected heights.  He has no manipulative, visual, communicative or mental limitations.

(AR 21-31).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show

**MEMORANDUM DECISION AND ORDER - 6**

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th

Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able

to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that

Petitioner is capable of performing past relevant work as a counter salesperson for auto parts, a

light/semi-skilled job.  (AR 31).  According to the ALJ, "[t]his work does not require the

performance of work-related activities precluded by [Petitioner's] residual functional capacity."

*Id*.

## B.    The ALJ's Decision Is Not Supported by the Requisite Substantial Evidence and Should be Remanded

1.    <u>Petitioner's Non-Compliance with Prescribed Medical Treatment</u>

In concluding that Petitioner is not disabled under the Social Security Act, the ALJ relied

in significant part upon Petitioner's non-compliance with prescribed medical care, stating in no

uncertain terms:

> Having reviewed the medical record as to the claimant's type II diabetes mellitus, *the undersigned has come to the conclusion that the claimant's diabetes responds to prescribed measures as long as the claimant remains medically compliant*. . . . .
>
> *However, the undersigned found out that the majority of the medical evidence revealed medical non-compliance. At the hearing, the claimant admitted that he had not seen anyone to manage his diabetes for close to one year.  He was supposed to be taking insulin and other medications to control his blood sugar, but he has not been able to afford the medications.  In essence, the claimant openly admitted to his non-compliance in treating his diabetes and diabetic neuropathy.*  In turn, the record shows that his non-compliance was contributing to the decline of his physical status as he started developing signs and symptoms of peripheral neuropathy of the upper and lower extremities causing burning pain, numbness, tingling and some loss of sensation.  His non-compliance also showed developing complications of sores on the skin of his arm as he demonstrated at the hearing, infected abscesses and

**MEMORANDUM DECISION AND ORDER - 7**

cellulitis, and a left foot ulcer.  Because of his diabetes, it was also hard to clear up the infections and his healing time was slowed.  Diabetes is also known to cause a tendency for adhesive capsulitis of the shoulders, which is exactly what was also demonstrated in later evidence, but again, how he was going to have his shoulders treated was complicated by poorly controlled diabetes. . . . .

According to Social Security Regulations, in order to get benefits, you must also follow treatment prescribed by your physician if this treatment can restore your ability to work.  *If you do not follow the prescribed treatment without a good reason, we will not find you disabled.* . . . .

Following all medical recommendations, in the treatment of physical or mental conditions, gives the undersigned a clearer understanding of the claimant's true functional abilities and/or limitations. . . . .

(AR 27-28) (internal quotation marks and citations omitted, emphasis added).

However, the fact that Petitioner may not have followed his medical providers' treatment protocols does not mean *ipso facto* that he is not entitled to disability benefits; rather, such a circumstance is excused when the reason for not doing so is justified.  *See, e.g.*, SSR 82-59, *available at* 1982 WL 31384, at *1 ("An individual who would otherwise be found to be under a disability, but who fails *without justifiable cause* to follow treatment prescribed by a treating source . . . cannot by virtue of such 'failure' be found to be under a disability.") (emphasis added);[1] SSR 96-7p, *available at* 1996 WL 374186, at *7 (individual's statements may be less credible "if the medical reports or records show that the individual is not following the treatment as prescribed *and there are no good reasons* for this failure.") (emphasis added); 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled or, if you are already receiving benefits, we will stop paying you

---

[1]  Social Security Rulings are final opinions and statements of policy by the commissioner of Social Security, binding on all components of the Social Security Administration.  *See* 20 C.F.R. § 422.406(b)(1).  They are "to be relied upon as precedent in determining cases where the facts are basically the same."  *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 8**

benefits.").  In turn, a two-step analysis is involved when addressing whether a claimant failed to follow prescribed treatment: (1) the ALJ makes a determination of such a failure; and (2) the ALJ makes a determination of whether the failure is justified.  *See* SSR 82-59, *available at* 1982 WL 31384, at *1 ("Where SSA makes a determination of 'failure,' *a determination must also be made* as to whether or not failure to follow prescribed treatment is justifiable.") (emphasis added); *see also id*. at *2 ("Where the treating source has prescribed treatment clearly expected to restore ability to engage in any SGA (or gainful activity, as appropriate), but the disabled individual is not undergoing such treatment, *appropriate development must be made* to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment prescribed.") (emphasis added).[2]

According to SSR 82-59, a claimant's failure to follow prescribed treatment because he is unable to afford such treatment is generally accepted as "justifiable" and, thus, such "failure" would not preclude a finding of disability or that disability continues.  *See id*. at *3-4 (listing "justifiable cause for failure to follow prescribed treatment" as including: "The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable."); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("The basic principle that applies in all disability cases . . . is exactly the same: Disability

---

[2] Any issue surrounding whether Petitioner's condition (without treatment) otherwise satisfies the relevant disability criteria is not particularly important for the purposes of addressing the ALJ's obvious reliance upon Petitioner's failure to follow prescribed medical treatment.  *See* Resp.'s Brief, pp. 5-6 (Docket No. 16) (discussing distinction between SSR 82-59, SSR 96-7p, 20 C.F.R. § 404.1530, and 20 C.F.R. § 416.930).  That is, regardless of whether a claimant's failure to follow prescribed medical treatment speaks to an after-the-fact regulatory bar to disability benefits (to an otherwise disabled claimant), or to an upfront challenge to a claimant's credibility (for the purposes of determining whether a claimant is actually disabled), it may nonetheless be justified (in either scenario) under certain understood circumstances.  *See infra*.

**MEMORANDUM DECISION AND ORDER - 9**

benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain

for lack of funds.").

      Except, here, the ALJ performed no analysis attendant to Petitioner's apparent inability to

afford certain prescribed medical treatment – an analysis that is not only required under the

applicable legal authority, but one that could have excused Petitioner's non-compliance in

treating his diabetes and diabetic neuropathy (something, again, the ALJ referenced numerous

times when denying Petitioner's claim to disability benefits). *See* SSR 82-59, *available at* 1982

WL 31384, at *4 ("Although a free or subsidized source of treatment is often available, the claim

may be allowed where such treatment is not reasonably available in the local community.  All

possible resources (e.g., clinics, charitable and public assistance agencies, etc.), *must be*

*explored*.  Contacts with such resources and the claimant's financial circumstances *must be*

*documented*.") (emphasis added).  The action is therefore remanded to allow the ALJ to revisit

this discrete issue and, in turn, determine its effect, if any, on Petitioner's disability

determination.

      To its credit, Respondent admits as much.  *See* Resp.'s Brief, p. 6 (Docket No. 16)

("[T]he Commissioner admits that the ALJ did not properly consider whether Petitioner's

inability to afford treatment was a good reason for his noncompliance.  The ALJ acknowledged

that Petitioner could not afford his prescribed medication and medical treatment, but still

discredited his allegations for this reason, which is inconsistent with the guidelines in SSR 96-

7p.").  Even so, Respondent argues that, in contrasting Petitioner's subjective claim of disability

with (1) his self-described daily activities and (2) musculoskeletal and neurological examination

findings in the record, the ALJ "gave two other legally sufficient reasons" for questioning

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner's credibility and, ultimately, finding Petitioner not disabled under the Social Security

Act. *See id*. at pp. 6-8.

      2.    <u>Petitioner's Credibility</u>

Preliminarily, as the trier-of-fact, the ALJ is in the best position to make credibility

determinations and, for this reason, his determinations are entitled to great weight. *See Anderson*

*v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities).  In evaluating a claimant's credibility, the ALJ may

engage in ordinary techniques of credibility evaluation, including consideration of claimant's

reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's

testimony and conduct, as well as claimant's daily activities, claimant's work record, and

testimony from physicians and third parties concerning the nature, severity, and effect of the

symptoms of which claimant complaint. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir.

2002).  Also, the ALJ may consider location, duration, and frequency of symptoms; factors that

precipitate and aggravate those symptoms; amount and side effects of medications; and treatment

measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL

374186 (discussed *supra*).  In short, "[c]redibility decisions are the province of the ALJ." *Fair v.*

*Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, to reject a claimant's testimony, the ALJ

must make specific findings stating clear and convincing reasons for doing so. *See Holohan v.*

*Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

      a.    *Petitioner's Daily Activities*

As to Petitioner's daily activities, the ALJ relies on Exhibit 9E – a September 29, 2011

"Function Report-Adult" – to conclude that Petitioner takes care of his personal hygiene on his

**MEMORANDUM DECISION AND ORDER - 11**

own; prepares daily meals for his children; helps out by doing the laundry and other household

chores on a daily basis; periodically does the shopping; pays bills, counts change, and handles a

savings account; spends a little time on his computer each day; walks a few blocks before

needing to rest for two to three minutes; gets along fine with authority figures; does not have any

specific problems in handling changes in his routine; and has a fair ability to handle stress.  *See*

(AR 29-30).  According to the ALJ, "if the [Petitioner] has the capacity to perform [these] daily

activities, then he should have the capacity to work."  (AR 30).  However, a closer examination

of the same Exhibit 9E paints a different picture:

- Despite using the maximum dosage of pain medications, pain limits his mobility and ability to wear clothing.  (AR 178, 179, 181).

- During the day, he mostly sits and waits for pain pills to provide (minimal) relief.  (AR 179).

- His wife helps with child care and housework.  *Id*.

- He sleeps very little, tossing and turning all night.  *Id*.

- When bathing, the water hitting his feet hurts.  *Id*.

- He seldom leaves the house or goes outside.  (AR 181-183).

- His constant pain makes him irritable and angry a lot.  (AR 183).

- He has no social life.  *Id*.

- His physical abilities (lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing) are very limited; he can't walk very far or carry more than a few pounds.  *Id*.[3]

---

[3]  A separate "Function Report-Adult" (submitted on July 11, 2011) similarly reveals a more limited Petitioner than the one the ALJ describes.  *See* (AR 161-169) ("Constant chronic pain makes wearing clothes difficult, and on some days, impossible . . . .  My wife does most of the cooking and laundry. . . . .  Some days I hurt too much to get dressed. . . . .  Being in constant pain wakes me up frequently; sometimes I don't sleep at all. . . . .  My body hurts too much to wear more than socks and shorts. . . . .  Some days I am in too much pain to do anything at all. . .

**MEMORANDUM DECISION AND ORDER - 12**

These alleged physical difficulties were reiterated by Petitioner's wife, Shannon Satter, who

states in relevant part:

> [Due] to all the medical issues that has came out in the last 4 years he is unable to do the things he enjoys.

> He can't lift his arms high enough to toss a ball with his kids out in the yard. He has a hard time playing cars on the table.

> Over the last few years Ryan has lost well over one hundred pounds. His muscle mass has depleted, such as picking up our son to put him in his high chair, or grabbing a gallon of milk. He struggles changing a diaper due to the pain in his shoulders. Certain movement of his arms will put him to his knees due to pain.

> There are 5 out of the 7 days Ryan has a hard time leaving the couch. He shakes and trembles in pain.

> Ryan loves his games on the computer and he struggles sitting there to play maybe an hour at a time and back to the couch he goes. As his wife it is painful to watch him go through all this pain and watch the love of my life suffer.

> Ryan is in so much pain it takes all his strength to get off the couch to use the restroom.

> Ryan's social life has dropped to nothing due to the thought of being ashamed of what he has become over the years. He hates to explain why he sees no one and goes no where. Over the few months he has forced himself to go visit a friend and attempt to help fix a car. Most days unable to do much. He gets fatigued and winded and unbalanced almost passing out.

> We are unable to make plans ahead of time on not knowing what his pain level and tolerance will be.

> Ryan has missed school functions for our kids due to being in so much pain, fatigued, and balance loss.

---

. . On bad days, I don't leave the couch/bed much. On good days, I can't do anything for very long, then I have to relax and wait for another set of pain pills to kick in. . . . . Clothing rubbing causes pain. Any movement hurts me. I am short-tempered and grouchy most of the time.").

**MEMORANDUM DECISION AND ORDER - 13**

> Ryan is a wonderful man, friend and father but due to his illness it has made him
> very short tempered and it pushes the kids and I away.  The kids noise level lights
> his short fuse.
>
> Ryan is only able to help me shop about an hour at a time and we have to leave so
> he can go home.  He has a hard time putting on clothing due to the pain and the
> burning.  The best way Ryan can explain his pain to me is a 2nd degree burn.
>
> Ryan is in so much pain all the time the kids and I don't even get close enough to
> him to touch him.  It even hurts for him to pick up his arms and hug me.
>
> This illness has taken everything away.  Ryan and I live our life spur of the
> moment on how he feels.

(AR 207-208).[4]  While Mrs. Satter is no medical expert and, likewise, cannot establish the

existence of a medically-determinable impairment, her insight into Petitioner's daily activities is

relevant given the ALJ's reliance on such select matters when questioning Petitioner's

credibility.  *See* SSR 06-03p, *available at* 2006 WL 2329939, at *2 (third-party accounts "may

be based on special knowledge of the individual and may provide insight into the severity of the

impairment(s) and how it affects the individual's ability to function.").

    The point here is that Petitioner's potential ability to engage in sporadic activities does

not necessarily support a finding that he can engage in regular work activities.  *See Reddick*, 157

F.3d at 722 (disability claimants should not be penalized for attempting to lead normal lives in

face of their limitations).  In other words, for purposes of this review, the "Social Security Act

does not require that claimants be utterly incapacitated to be eligible for benefits, and many

home activities are not easily transferable to what may be the more grueling environment of the

workplace, where it might be impossible to periodically rest or take medication."  *Fair*, 885 F.2d

at 603; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences

---

[4]  Other relatives' and friends' correspondence parallels the limitations that Petitioner
claims he suffers.  *See* (AR 209-214).

**MEMORANDUM DECISION AND ORDER - 14**

between activities of daily living and activities in a full-time job are that a person has more flexibility yin scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (citations omitted); *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (explaining that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); *Gallant v. Heckler*, 753 F.2d 1450, 1453-55 (9th Cir. 1984) (that claimant could cook for himself and family members as well as wash dishes did not preclude finding that claimant was disabled due to constant back and leg pain).

Petitioner may very well not be disabled.  However, the ALJ's selective accounts of Petitioner's daily activities was incomplete and thus the ALJ's assessment that Petitioner's daily activities undermined his credibility does not amount to specific, clear, and convincing reasons to support his credibility determination.  The action is therefore remanded to allow the ALJ to revisit this discrete issue and, in turn, determine its effect, if any, on Petitioner's disability determination.

b.      *Petitioner's Musculoskeletal and Neurological Examinations*

Separately, the ALJ concluded that the objective medical evidence did not support the degree of limitation alleged by Petitioner, stating:

> The medical record establishes the fact that his diabetes is poorly controlled. However, in addressing his functioning, most of the examination findings revealed a normal gait and normal neurological findings as to strength, reflexes and sensation with the upper and lower extremities, including a fairly normal range of motion.

**MEMORANDUM DECISION AND ORDER - 15**

> Although he alleges that he is disabled, outside of some sensation loss in his feet, musculoskeletal and neurological findings are fairly normal and do not identify any specific functional limitations.

(AR 29).  Though the ALJ did not specifically cite to any of the referenced findings in the record, they presumably are contained in the treatment notes from Amy L. Reid, M.D.[5]

It is true that, within these treatment notes, Dr. Reid makes the following notations pertinent to her physical exam of Petitioner:

> MUSCULOSKELETAL: He does have diffuse tenderness to palpation over his bilateral thoracic and lumbar paraspinal muscles.  He is able to forward flex to almost touch his toes.  He has full extension, but this does cause pain.  He is able to toe-walk and heel-walk without difficulty.

> NEURO: Mental status alert and oriented.  Reflexes are intact and symmetric in bilateral upper and lower extremities.  He does have reduced sensation to light touch over the medial aspect of bilateral calves as well as over all of his fingertips.  He has full strength to bilateral upper and lower extremities.

> . . . .

> MUSCULOSKELETAL: He does have some tenderness to palpation over the distal acromion bilaterally.  He is able to abductor bilateral shoulders just to 90 degrees, otherwise it causes too much pain.  He does have positive impingement signs bilaterally.  Gait is within normal limits.

> NEUROLOGIC: Mental status alert and oriented.  He has full strength when testing bilateral upper and lower extremities.  He continues to have reduced sensation to light touch over the bilateral lower extremities.

(AR 244, 325, 426).  But these impressions – sometimes only (fragments of) sentences long – neither discuss in any meaningful way Petitioner's actual capacity to perform work-related functions, nor obviously run counter to his allegations of pain and associated limitations.

---

[5]  To be sure, within his January 22, 2013 decision, the ALJ discussed Dr. Reid's treatment notes throughout.  *See* (AR 24-27).  Further, Respondent cites to the particular treatment notes it claims supports the ALJ's decision in this regard.  *See* Resp.'s Br., p. 8 (Docket No. 16) (citing (AR 244, 325, 424, 426)).  The first of these two treatment notes are identical.

**MEMORANDUM DECISION AND ORDER - 16**

Indeed, the ALJ's own paraphrasing of the same/similar treatment notes from Dr. Reid (with similar musculoskeletal and neurologic examination findings) reflects a more starker reality concerning Petitioner's physical condition.  For example, the ALJ himself noted:

• He placed his pain at a 6/10 level.  He also noted that he had developed burning pain radiating from his low back and around his hips and then down into his thighs and feet.  He was experiencing burning, tingling and numbness in his feet and fingertips more recently.  It was noted that his diabetes was not well controlled and diabetic neuropathy was considered.  A past trial of Lyrica and Hydrocodone was not very effective in helping his pain.  He also reported no relief from pain with anti-inflammatory medications. (AR 24) (citing (AR 244, 245)).

• He reported that his pain was allover and in his low back.  He was experiencing burning pain with his legs and feet at a 7/10 pain level.  Cymbalta was prescribed on an as-needed basis.  His Tramadol was discontinued and he was started on 10 mg of Flexeril.  He was also started on Lortab.  He has tenderness and muscle spasms to palpation of his bilateral lower lumbar paraspinal muscles.  He had a normal gain and was mentally alert and oriented.  (AR 25) (citing (AR 241-242)).

• Cymbalta made him sick to his stomach and he also experienced some depressive side effects with this medication.  He found that both Lortab and Flexeril did not provide much relief and he could not detect the difference between the use of Lortab or Tylenol #4 for his pain.  He placed his neuropathic and low back pain at a 4/10 level.  He had a normal gait on examination and did not appear to be in acute distress.  He was mentally alert and oriented.  (AR 25) (citing (AR 239-240)).

• He continued to report burning pains in both of his legs, along with low back pain.  His pain was placed at a 6/10 level.  On his neurological examination, he had full strength but was hypersensitive to touch over both lower extremities.  (AR 26) (citing (AR 301-302)).

• He described his neuropathic pain at a 5/10 level.  A brief examination revealed a normal gait.  He was found to be mentally alert and oriented in all spheres.  (AR 26) (citing (AR 300)).

• Tramadol was not working in controlling his neuropathic and low back pain.  He was put back on Tylenol #4 tablets.  The claimant admitted that this was the only medication that allowed him to function during the day and he took six tablets a day.  He noted a continuation of burning pain in his legs, feet and now all over his body, but he also noted that the burning pain was not as

**MEMORANDUM DECISION AND ORDER - 17**

severe.  The claimant reported a new problem of left shoulder pain and aching at a 6/10 level with a decreased range of motion.  The claimant reported that his diabetes was out of control as he continued to have difficulties in affording his diabetic supplies and his medications.  On examination, he had full strength with his upper and lower extremities bilaterally, but he was unable to abduct his left shoulder past 90 degrees.  (AR 27) (citing AR 428-429)).

•      A January 7, 2013 visit to Dr. Reid revealed a normal gait and mental status.  However, he had reduced sensation to light touch over bilateral lower extremities.   Medical impression was polyneuropathy from diabetes, degeneration of the lumbar spine and lumbago.  (AR 27) (citing (AR 424-425)).

To be clear, these more developed notes do not establish that Petitioner is disabled; but, they exist to call into question the ALJ's unadorned conclusion that Petitioner's "musculoskeletal and neurological findings are fairly normal and do not identify any specific functional limitations."  (AR 29).  This is particularly the case when, part and parcel with one of these *same* treatment notes, Dr. Reid opined that Petitioner "will have difficulty working as he continues to have significant pain from his neuropathy in his lower extremities."  (AR 302).

Coupled with the shortcomings identified earlier, the possible irreconcilable nature of the ALJ's reliance upon certain of – but not all – Dr. Reid's considerations and opinions is called into question and does not amount to a specific, clear, and convincing reason to support his credibility determination.  The action is therefore remanded to allow the ALJ to revisit this discrete issue and, in turn, determine its effect, if any, on Petitioner's disability determination.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational

**MEMORANDUM DECISION AND ORDER - 18**

interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *See Key*, 754 F.2d at 1549.

However, as stated herein, the reasons given by the ALJ in support of his determination that Petitioner's complaints are not fully credible, are not sufficiently clear and convincing and, therefore, not supported by substantial evidence in the record.  It is for this reason that it is necessary to remand this action for further consideration by the ALJ.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The Commissioner's decision that Petitioner's subjective complaints are not credible is not sufficiently clear and convincing; therefore, this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **March 28, 2016**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**